Ladies and gentlemen, may it please the court, Bridget Kennedy, Federal Defenders of San Diego, and I'm appearing for the appellant, Mr. Robert Aguilar. There's two things I'd like to focus on in my argument today. First, in this hearing, the district court relied on a clearly erroneous fact, its mistaken belief that Mr. Aguilar was involved in a robbery, in order to deny his 3582 motion. Second, at this hearing, the district court made multiple factual findings that were inconsistent with the factual findings it had made at the original sentencing hearing, based on information the court allegedly learned in multiple jury trials that Mr. Aguilar had no notice of would be considered before this hearing. Could I ask you about this mistake as to the involvement in the robbery? Is that on plain error review? I believe everything is on plain error review here. There were no objections made to that. Let me ask, why do you say that? Sentencing is sort of quintessentially entrusted to the sound discretion of the district court, and we have a number of published opinions saying sentencing reduction motions specifically are subject to abuse of discretion. Just mechanically, why is that not the better standard than plain error? And by the way, as far as I know, and you can tell me if I'm wrong, there is no published decision saying plain error attaches to review of a reduction motion. Certainly, abuse of discretion, I think, would be a better standard. I think I would urge the court to adopt that, if the court is considering that. But I think here, relying on a fact such as, you know, Mr. Aguilar's involvement in a robbery that he was not involved in, and relying on it so heavily in denying the motion, meets either standard. It's an abuse of discretion. It's also plain error. Was there an objection? Is that right, where the parties seem to have agreed that it's plain errors because nobody objected at the time? Correct. There were no objections at the time. And that's typically been our approach, where there's no objection, and particularly if the attorney had said, you know, you may be mistaken, but he actually wasn't involved in the robbery, to make sure that then the sentencing was proceeding on the appropriate landscape. But even so, if there's the improper reliance, the question is, what's the result? And here, I mean, I think if we look at the plain error standard, the question is, did this improper reliance have the possibility of impacting the judge's decision on the 3582 motion? The language is reasonable probability. Joseph defines reasonable probability as the possibility of impacting the judge's decision. I think one thing that's important here is it's not a question of, would the judge have granted this motion in whole? Would the judge necessarily have gone down to 87 months? Is it even possible the judge would have gone down to 87 months? If it's even possible that without making this mistake, the judge would have gone down one month or, you know, just granted the motion in part. You say it's a mistake, but I've read that transcript a couple times now, and it is, you know, plain as murky water. I can't tell. I don't see anything. You can point me to it, please, where the judge clearly said, I'm holding you responsible for this robbery. And as a result of that, your motion is denied. I do think that I agree that it's murky until about page 13 of the transcript, where the defense attorney specifically asks the court to focus on Mr. Aguilar's case and says, you know, Mr. Aguilar's case is different. Towards the bottom of page 14, actually beginning at line 18, that's, the court then goes on to explain why, as to Mr. Aguilar, the motion would be denied. At the beginning, you know, the court has about one page of transcript describing why Mr. Aguilar's motion should be denied. Beginning with, with regards to Mr. Aguilar, if you look, in that particular case, there were also firearms involved. So when they robbed, and then goes on to describe this robbery and the 16-year-old victim and then the testimony of this 16-year-old victim. The court then, in the middle of page 15, the court is then concluding its ruling on why Mr. Aguilar's motion would be denied. And the concluding statement is, this was a case where they, it was a stash house robbery involving firearms and also involving this 16-year-old young boy. I think Mr. Aguilar actually got a pretty good deal when I sentenced him to 108 months. Well, let me explore that with you. So under 3553A, the judge's ability to consider evidence is basically unlimited. It doesn't have to be admissible. It doesn't have to be a verdict. It can be anything the judge thinks is right under 3553A. I don't see the judge saying in that transcript section you just cited, I find the defendant to have been involved. He is certainly around people who are involved. He's certainly around guns. He's certainly around other people in the conspiracy. That's all the judge seems to be saying to me. He doesn't seem to be finding, quote-unquote, finding that the defendant participated. I think that's an incorrect reading of the record. I think when the court is saying they repeatedly when discussing why Mr. Aguilar should not be granted the motion, it's clear that the court is including in they Mr. Aguilar. The court certainly can consider anything in 3553A that's accurate. The court cannot consider something that is factually inaccurate, that is clearly erroneous. Tell me the facts of this. So he was involved. Wasn't it his girlfriend's house that was robbed? Yes. He wasn't convicted of robbing his girlfriend's house. He wasn't part of that aspect. Exactly. And no one has ever said he was until this motion hearing when the judge seems to have come to that conclusion. So Mr. Aguilar got involved around October of 2012. This robbery happened about November of 2012. The record's unclear whether Mr. Aguilar and Ms. Cruz, the girlfriend and the victim of the robbery, were living together yet at that point, but they were definitely living together for months leading up to the arrests in the spring. So either Mr. Aguilar was living at the house at the time of the robbery and therefore would also be, I think, considered a victim of the robbery, or Mr. Aguilar was dating the woman who was living there and then moved into that house at some point shortly after, which, of course, again, there's no allegation that he was involved anywhere. The government concedes that. But even if there was a concern he could have possibly been involved, it's certainly unlikely that he would have continued to date this woman and moved in with her if he had been involved in robbing her. Let me ask you, was in an earlier sentencing the judge had said he was basically a cog? Yes, and so that's my second point. At the original sentencing hearing, the court found that he was just a cog and agreed with the base offense level 34, meaning that the court found that his relevant conduct that he was responsible for was 1.5 to 5 kilograms of methamphetamine. Do we read that together in terms of the judge's understanding of what happened? I think so. That absolutely informs what the judge's understanding at that time, based on the court at that point had watched the trial of the co-defendants in this indictment, of course, read the PSR and all of the other sentencing submissions, and this is a man who was involved in this conspiracy for about six months. Well, certainly you're not saying the judge's hands were tied, that once having said something at an earlier sentencing, he was forevermore bound by that. No, the problem is here, I think, that the judge made new findings with absolutely no notice given to the parties. This is an unusual situation where Mr. Aguilar was not present. The defense attorney and the prosecutor in court had not been involved at the trial level. And the judge is basically springing on them, these three jury trials, at least three jury trials, which are unidentified, and they are in no position at that point to argue out, was it really more than 5 kilograms of relevant conduct, or was the judge's original decision correct? Was there a new PSR prepared for the sentencing reduction? No, the only additional submissions was the motion and the responses. Well, that's because it was sentence reduction, it was not sentencing. Correct. You wouldn't have a PSR for that. I don't believe you would. You wouldn't. But you could have a new recommendation from the probation office. I mean, you could ask for one. And I don't believe that was done, and certainly there's nothing on the record that there was any additional information from probation. I would like to reserve a little bit of time for rebuttal. Yes, you may. You can, but I have one more question before you sit down. So, on the reasonable probability, at the original sentencing, the judge made this comment that he wouldn't change that 108-month sentence. You know, some more thing about it. The likelihood was as much as there is now in the Imperial County. And how do we factor that into the reasonable probability analysis? I have three responses to that. First, the court's language was that even if the guidelines changed, it would not affect his decision, and he would probably have as much chance of winning as it's snowing in Imperial Valley in August. So it was not as definitive of a statement as I think the government argues that it is in their reply. Secondly, this court has repeatedly held in Nunez-Camarena, in Garden Hire, that a district court's statement that a guidelines change would not impact its sentencing decision is to be disregarded in deciding whether there's prejudice. The third thing I would say is the district court here made that statement at the original sentencing hearing about two years before it was actually called on to make a decision in this motion. Weren't the changes in the sentencing reduction changes in the works? Weren't they just enacted shortly after this? They were in the works, and it was a matter of months later that year that they were enacted, that's true. And I think that's why it was discussed at the original hearing. But I don't think the court should sanction allowing a district court to prejudge a motion like that two years in advance without having heard the motion and without having even the benefit of the changed law that made the motion possible. Thank you. Thank you. Good morning. May it please the Court. Nicole Reese Fox for the United States. I was hoping I could just clear up a little bit the confusion about the facts about this robbery. There were three trials that the district court heard that all arose out of the same wiretap. So there were three separate indictments. There were probably something around 80 defendants that the court heard over the course of a couple of years, but there were three trials. One of the trials was the conspiracy. It was two of the sort of lead defendants in this 22-defendant conspiracy that Mr. Aguilar was a part of. Another trial was the robbery trial. And several of the co-defendants in the conspiracy case were part of the robbery. For example, Mr. Palafox, who was one of the defendants that filed the 3582C motion along with Mr. Aguilar, he was only indicted in the conspiracy case, but he was sort of the ringleader of the robbery. And upon his opening brief, they cite to the transcript, in footnote one of the opening brief, the transcript from that trial. And I would encourage the court to review that transcript if you haven't already. You'll see that Mr. Aguilar's name does surface quite a bit, not as a perpetrator of the robbery, but he was sort of the ‑‑ he was dating Ms. Cruz. They were running this stash house, and this was basically a turf war. Well, they were living together. They weren't just dating, right? They were living together. They were cohabitating together. Yes, Your Honor. And, in fact, some of the cooperators who testified in the robbery trial stated that one of the reasons they were armed is that they knew that Aguilar, whose name was Gangster, he had a gun. And they were worried that he would be there, and if he would be there, that things could get violent. So to the extent that ‑‑ Things could get violent if they just went to the stash house to steal the drugs. True. And that's exactly the district court's point, is that this is violent activity, that this conspiracy was a massive drug distribution ring, and there was infighting, there was violence involved. And Mr. Aguilar himself was trafficking in guns and reconciling. It does seem to ‑‑ I mean, from reading the sentencing reduction transcript, it does seem that the judge got a little confused in what role exactly Aguilar had played, and whether he was a victim of the robbery or whether he was a robber. I agree it's unclear what was in the district court's mind, but I would emphasize that the court at numerous times throughout the hearing emphasized that Mr. Aguilar was the one mixing guns and drugs, that this conspiracy, which there's no doubt Mr. Aguilar was a key part of, was massive, that it was ‑‑ the seriousness of the violation hadn't changed between the original sentencing and the 3582C hearing. The court emphasized the public safety rationale, specifically with respect to Mr. Aguilar, not having nothing to do with the robbery, but the fact that he was one of the ones trafficking in guns and firearms. And so even if it's unclear what the district court had in its mind with respect to Mr. Aguilar's role in the robbery, there are many other factors that undisputably apply to Mr. Aguilar and justify the district court's decision. And because we do submit that this should be reviewed on plain error, the district court's comments at their original sentencing demonstrate that there's no reasonable probability, there's no possibility that had the district court more clearly articulated his views of Mr. Aguilar's role in that robbery, that anything would have been different in the 3582C hearing. There's no dispute, right, that Mr. Aguilar was associated with firearms? Correct, Your Honor. In the PSR, at several points, the PSR mentions that he sold, I think there were two firearms. As I mentioned in the trial, the robbery trial, there's testimony about him and Ms. Cruz driving north to get a gun because they knew that this robbery was going to happen. So when the district court is talking about public safety, there's good reason to be concerned about Mr. Aguilar in that 3553A factor. Unless the court has any other questions we would submit. Thank you. We took a lot of your time at the end for questions, so we'll give you another minute for rebuttal. Thank you. Just one point I'd like to address in rebuttal. Certainly there were other factors that the court looked to in denying this 3582 motion. There were other factors the court could look to, such as the gun involvement. But I don't think that that means that any reliance on a clearly erroneous fact or unnoticed new factual findings has no possibility of impacting his decision. This court has repeatedly held in Hammonds, in Burgum, also in Tapia, that if there's any concern that this improper factor impacted the court's decision, that that's enough to establish prejudice, even under the plain error standard. So even if there's other factors the court did or could look to, that does not erase the taint of looking to these improper and clearly erroneous facts in this case. I would also just point out regarding prejudice, this is a case where the remand would be for a new 3582 motion hearing that does not even require producing the defendant. This is even less than a sentencing remand hearing, and I think the court should consider that in determining prejudice. Thank you. Thank you. I thank both of you for the argument this morning. United States v. Aguilar is submitted.
judges: McKeown, Wardlaw, Donato